**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

**STEVEN DEXTER,**
**Plaintiff,**

**v.** **Case No. 2:11-CV-48-CEH-DNF**

**MICHAEL J. ASTRUE, Commissioner of Social Security,**
**Defendant.**
_____________________________________/

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT**

Plaintiff appeals to the district court from a final decision of the Commissioner of Social Security denying his applications for a period of disability, disability insurance benefits (DIB) and Supplemental Security Income (SSI)[1] benefits pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) of the Social Security Act. Plaintiff applied for a period of disability and disability insurance benefits on July 26, 2006, alleging disability beginning June 9, 2006. Both claims were denied on November 17, 2006, and upon reconsideration on January 9, 2008. Plaintiff filed a written request for hearing. Plaintiff appeared in Fort Myers, Florida before Administrative Law Judge "ALJ" M. Dwight Evans on August 3, 2009. Plaintiff filed a Request for Review which was denied. Plaintiff's last date insured is December 31, 2011. On September 14, 2009, the ALJ's decision became the final decision of the Commissioner. For the reasons set forth below, it is respectfully recommended that this case be **AFFIRMED**.

[1] The disability definitions for DIB and SSI are identical, cases under one statute are persuasive as to the other. *Patterson v. Bowen*, 799 F.2d 1455, 1456 (n.1 (11th Cir. 1986); *McCruter v. Bowen*, 791 F.2d 1544, 1545 n.2 (11TH Cir. 1986).

Plaintiff timely pursued and exhausted his administrative remedies making this claim ripe for judicial review under 42 U.S.C. 405(g). The Commissioner has filed a transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties have filed legal memoranda.

## I. SOCIAL SECURITY ACT ELIGIBILITY, THE ALJ DECISION AND STANDARD OF REVIEW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § § 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505-404.1511. The Plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

At Step 1, the ALJ found Plaintiff has not engaged in substantial gainful activity since his alleged onset date of June 6, 2006 (Tr. 16). At Step 2, the ALJ found that Plaintiff has the following severe impairments: "anxiety disorder, depression, osteoarthritis (ankle/feet) and peripheral neuropathy" (Tr. 16). At Step 3, the ALJ found Plaintiff did not have an impairment or combination of impairments which met the criteria of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. At Step 4, the ALJ determined Plaintiff has the ("RFC") residual functional capacity "to perform medium work except he is limited to frequent but brief interpersonal contact with others" (Tr. 21). The ALJ concluded Plaintiff is capable of

performing his past relevant work as a building cleaner and cashier clerk, identified in the Dictionary of Occupational Titles at 381.687-018 and 211.462-014 respectively (Tr. 33). Accordingly, the ALJ determined Plaintiff not disabled at step five of the sequential evaluation 20 C.F.R. 404.1520(g) (Tr. 22).

The standard or scope of review applicable to this case is limited to determining whether the findings of the Commissioner are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971), and whether the correct legal standards were applied, *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Substantial evidence is defined as "'more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)). The reviewing court "'may not decide the facts anew, reweigh the evidence, or substitute [its own] judgment for that of the [Commissioner].'" *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004). Even if the court finds that the evidence preponderates against the Commissioner's decision, the court must affirm the Commissioner's decision if the decision is supported by substantial evidence. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003).

## II. REVIEW OF FACTS

### (A) Background Facts:

Plaintiff was born on August 16, 1958, and was 50 years old at the time of the hearing (Tr. 38). Plaintiff testified he completed eleventh grade and did not apply or ever receive a general equivalency diploma ("GED"). Plaintiff never received any vocational training and was never in the military. Plaintiff advised he had no problems with reading or writing (Tr.

39). Plaintiff worked in department stores, warehouses, stocked shelves and did cashiering. Plaintiff's last position was at a CVS pharmacy where he was a photo tech (Tr. 40).

Plaintiff testified that on June 9, 2006, while he was working at a CVS pharmacy he quit his job. Plaintiff testified that he had a nervous breakdown a few weeks before because he was stressed with the job responsibilities and that he had been hospitalized for a weekend (Tr. 42). Plaintiff states he also quit because he has problems with his feet, i.e. he has arthritis in both feet and no arch support. The job required him to be on his feet 9 to 9 1/2 hours per day and he couldn't do it.

Plaintiff was seen by Steven Hentoff, Ph.D., on October 31, 2006, for a psycho-diagnostic interview by the Disability Determination Services of Massachusetts to assess his current level of functioning in light of his application for social security disability benefits. Plaintiff reported being unable to maintain employment due to anxiety and panic attacks. Plaintiff's first panic attack occurred in the summer of 2005 while he was working at a local drug store. Plaintiff was taken on a stretcher to the local emergency room and kept overnight for treatment and observation. A second panic attack occurred in June of 2006 and he again presented to the emergency room and was treated for anxiety. Plaintiff 's current medications consist of Fluoxetine and Xanax. Plaintiff reported a history of alcohol dependence but advised he has been sober since his panic attack last summer. Plaintiff's medical status revealed he is significant for hypertension and diabetes. "IMPRESSION: Alcohol dependence in early remission, out patient mental health services and maintained on Prozac and Xanax. Plaintiff was noted for anxious mood, reported periods of lethargy, depression and intermittent suicidal thoughts. Bipolar disorder was ruled out" (Tr. 246-247).

On October 19, 2006, a Psychiatric Disorder form was completed by Jennifer Durham, (position unknown) and the report was co-signed by Tom Weiss, M.D. Plaintiff's mental status was found to be "oriented x3, thoughts appear clear and coherent, denied suicidal ideations" (Tr. 242). Further, Plaintiff had lived independently for approximately five to ten years and was able to maintain social relationships. It was noted that client's anxiety interferes with activities of daily living - claimant is easily overwhelmed, unable to prioritize and complete demands resulting in inability to hold employment position. Plaintiff experiences high levels of anxiety and is unable to complete assigned tasks. However, Plaintiff's concentration and attention can be sustained for extended periods without distraction when Plaintiff does not feel pressure or expectations (Tr. 242).

On September 6, 2006, John E. Hoye, M.D. completed a Psychiatric Disorder Form. Dr. Hoye found Plaintiff to suffer from anxiety and panic attacks. Dr. Hoye found Plaintiff did not have problems in terms of social relationships, daily responsibilities and leisure time activities. Plaintiff was found to have no problems with concentration or attention that would interfere with timely task completion or regular routines. However, Plaintiff was found to have "symptoms develop when he perceived excessive numbers of tasks". Dr. Hoye further found Plaintiff did not require excessive supervision, was unaware how patient got along with others and found Plaintiff able to travel in public (Tr. 222).

On November 16, 2006, John Burke, Ph.D. completed a mental residual functional capacity assessment (Tr. 263). Dr. Burke's notes reveal the following: "lives in boarding house, personal care ok, chores, manages money, EAEDC, social, no psych complaints. Hoye MD (From 7/06-9/06) - Anxiety and panic attacks, concentration and memory no problems, no

other psych problems, on Xanax 1 mg. Bid. "prognosis good with schedule adjustments by employer. Weiss MD Advocates Psych Assoc (7/21/06-10/3/06) - Dysthymia, Gen. Anx. DO, RO panic DO. GAF 50, MSE - mood and affect congruent, can do less than complex tasks when high levels of anxiety, memory ok, meds and therapy. Hentoff Ph.D (CE of 10/31/06) - had 2 panic attacks since the summer of 05 (last was 06/06), Prozac and Xanax, also long hx of alcohol dependence, sober since last summer, no LD hx, indep ADL's, MSE somewhat circumstantial, not appearing depressed, anxious, no current signs, otherwise unremarkable exam. GAF 45 - Anxiety Disorder, Alcohol Dependence in early remission, RO Bipolar. See RFC. Partially credible, the claimant describes his ADL's as generally ok and treating sources find no severe impairments with the possible exception of no complex tasks when he gets anxious. One TP alludes to the claimant working. Also I cannot determine where CE doctor found a GAF of 45, the exam does not indicate such a low GAF. No record of AA etc." (Tr. 263).

Regarding Plaintiff's Functional Capacity Assessment Dr. Burke found Plaintiff "had no limitations, was capable of simple tasks of concentration and attention when anxious, has no limitations, and could be expected to adapt to a low stress task environment with continued treatment and sobriety" (Tr. 265).

On January 5, 2007, Plaintiff was admitted to Metrowest Medical Center and was seen by Dr. Richard J. Goldbaum. Plaintiff complained of depression and suicidal ideation. Plaintiff was placed in a care unit and was checked every 15 minutes. While in the hospital Plaintiff improved but was unwilling to leave the hospital. Plaintiff was finally discharged and released to his sister's care on January 12, 2007. Plaintiff was prescribed Prozac, Avandia,

Aspirin, Alprazolam, Lisinopril and Metformin. Plaintiff was scheduled a follow-up appointment with psychiatrist, Susan Richardson for January 18th and with therapist, Jen Durham on January 15th. It was recommended that Plaintiff remain consistent with his medications (Tr. 268).

On November 26, 2007, Gary Cater, D.O. completed a Physical Residual Functional Capacity Assessment. Plaintiff was determined to be able to occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk about 6 hours in an 8-hour work day, and showed unlimited push and/or pull abilities. Dr. Cater's determination was based on "no significant motor or neuro limitations noted at recent exams, should be capable of work consistent with this RFC" (Tr. 293).

On January 7, 2008, Sharon Ames-Dennard, Ph.D. completed a Psychiatric Review Technique form. Plaintiff was found to have "non-severe impairments related to medical"; "12.04 affective disorders and 12.06 anxiety-related disorders" were check marked (Tr. 302). Dr. Ames-Dennard's notes stated: "Clmt is a 49 y.o. male with physical and mental health complaints. TP MSE dated 12/07 indicated that clmt was euthymic, displayed an intact thought process, was reality based, demonstrated good conc., was oriented and had intact memory fx. There was no evidence of psychosis. He was DX with Gad, depression, NOS. There is no Hx of psy. admission. Clmt described a typical day as having breakfast, going for a walk, reading, watching tv, napping, preparing dinner and retiring to bed. He reported being able to prepare food, complete HH chores, drive, shop, manage money. Clmt reported some social skills deficits. 3rd party ADLS were commensurate. Data analysis supports a not severe mental impairment. A referral to another medical specialty is deemed appropriate" (Tr. 314).

On December 2, 2008, Plaintiff was admitted to the Crisis Stabilization Unit at Charlotte Behavioral Health Care for a psychiatric evaluation. Plaintiff was seen by Majd Alsamman, M.D. Plaintiff reported having auditory hallucinations. He stated he had been misusing his Xanax and had ran out of Xanax two weeks prior. Plaintiff denied any suicidal or homicidal ideation or plan, denies any commanding hallucinations at this time, denies any delusions. Recommendation was to admit patient to the Crisis Stabilization Unit, place him on withdrawal precautions and start him on Haldol for help with his auditory hallucinations, to get him stabilized on medication and then discharge him to an out-patient program with counseling and psychiatric services (Tr. 397-398).

Plaintiff requested discharge on December 4, 2008. Plaintiff no longer met Baker Act criteria. Plaintiff was discharged to an out-patient program, with counseling and advised to follow up with psychiatric services. Plaintiff was advised by Dr. Alsamman not to take Xanax anymore and to just take the medications he was prescribed. Further, to follow up with his primary care physician on an out-patient basis (Tr. 400).

## III. SPECIFIC ISSUES

### A. THE ALJ FAILED TO WEIGH THE MEDICAL EVIDENCE IN THE RECORD; SPECIFICALLY THE PSYCHIATRIC REVIEW TECHNIQUE AND MENTAL CAPACITY ASSESSMENT COMPLETED BY DR. JOHN BURKE

Plaintiff argues that the ALJ did not weigh the psychiatric review technique form (PRTF) and mental residual functional capacity (MRFC) completed by John Burke, Ph.D., in November 2006 (Pl.'s Br. at 12-15). Dr. Burke was a non-examining state agency psychologist who reviewed Plaintiff's medical records and completed his assessments in November 2006

(Tr. 249-62, 263-65). Dr. Burke assessed Plaintiff with moderate limitations in maintaining concentration, persistence or pace (Tr. 259).

Dr. Burke reviewed and addressed the records of two treating physicians, John E. Hoye, M.D. and Tom Weiss, M.D., and the consultative examiner, Steven Hentoff, Ph.D. (Tr. 218-23, 225-44, 245-58, 261). He noted Dr. Hoye's September 2006 assessment that Plaintiff's prognosis was good with scheduled adjustments by the employer (Tr. 223, 261). Dr. Burke noted Dr. Weiss's October 2006 assessment that Plaintiff was unable to complete tasks when experiencing high levels of anxiety, but that his memory was OK (Tr. 242, 261). Dr. Burke made note of consultative examiner Hentoff's examination that indicated Plaintiff had had two panic attacks, was on Prozac and Xanax, did not appear depressed or anxious, and had a long history of alcohol dependence (Tr. 245-48, 261). Dr. Burke noted "cannot determine where CE doctor [Hentoff] found a [global assessment of functioning] GAF of 45, the exam does not indicate such a low GAF" (Tr. 248, 261).

Dr. Burke also completed the MRFC form in which he determined Plaintiff as having moderate limitations in the ability to carry out detailed instructions, to maintain attention and concentration for extended periods, and to respond appropriately to changes in the work setting (Tr. 263-64). He assessed Plaintiff as being capable of simple tasks of concentration and attention when anxious and able to adapt to a low stress (anxious) task environment (Tr. 265).

Plaintiff is correct that the ALJ is supposed to consider all the medical opinions in the record, including the opinions of a non-examining source. (Pl.'s Br. at 13). 20 C.F.R. §§ 404.1527(f), 416.927(f). The opinions of non-examining sources may be evaluated just as any other medical opinion, taking into account the consultant's specialty, the supporting evidence

and explanations and any other factors. C.F.R. §§ 404.1527(f), 416.927(f). The ALJ must explain the weight given to their opinions. 20 C.F.R. §§ 404.1527(f)(2)(ii), 416.927(f)(2)(ii). Although the ALJ is not required to articulate the reasons for that weight, he did so in this instance.

The ALJ explained the weight given to Dr. Burke's MRFC, although he did not mention him by name (Tr. 32). The ALJ stated,

> "The RFC conclusions reached by the physicians employed by the state disability determination services also generally support the RFC in this decision". Although the physicians were non-examining, and therefore, their opinions do not as a general matter deserve as much weight as those of examining or treating physicians, those opinions do deserve some weight, particularly in a case like this in which there exist a number of other reasons to reach similar conclusions (as explained throughout this decision) (Tr. 32).

Three non-examining state agency sources issued assessments in this case. Two of these were psychologists who completed PRTFs: Dr. Burke and Sharon Ames-Dennard, Ph.D. (Tr. 249-62, 302-15). The third was Gary Cater, D.O., who completed a physical RFC assessment in November 2007 (Tr. 292-99). While the ALJ did not refer to Dr. Burke by name, his reference to multiple "physicians employed by the state disability determination services," because it was plural, included Dr. Burke. The ALJ gave "some weight" to these opinions, and stated that the reason for attributing their opinions "some weight" was that they were consistent with other evidence in the record (Tr. 32). Other evidence that was consistent included Plaintiff's testimony that his anxiety attacks had decreased since he moved to Florida (Tr. 43) and multiple references to Plaintiff's continued search for jobs throughout the relevant period (Tr. 26, 176, 349, 355).

The ALJ cited the opinions of Plaintiff's treating physicians and gave great weight to the September 2006 opinion of treating physician Dr. Hoye (Tr. 31, 221-22).[2] The ALJ spent over ten pages of his decision (Tr. 21-31) carefully reviewing the medical records and noting the inconsistencies in Plaintiff's reported use of alcohol, reasons for quitting his job and most importantly, his active search for work, which required him to represent himself as employable and capable of engaging in work activity (Tr. 30, 40, 284, 288, 349, 355, 364). The ALJ was supported by substantial evidence in his assessment of the medical opinions, even if he did not mention Dr. Burke by name.

**B. THE ALJ PROPERLY ASSESSED PLAINTIFF'S ABILITY TO PERFORM PAST RELEVANT WORK WITHOUT CONSULTING A VOCATIONAL EXPERT**

Plaintiff contends that because the ALJ found he was limited to "frequent but brief interpersonal contact with others," a non-exertional limitation, he was required to utilize the testimony of a vocational expert to determine whether he could perform his past relevant work. (Pl.'s Br. at 15-17).

Plaintiff's contention that the ALJ was required to obtain testimony from a vocational expert (VE) is without merit. The ALJ found at the fourth step of the sequential evaluation process that Plaintiff could perform his past relevant work as generally performed in the national economy (Tr. 33). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An ALJ is not required to consult a VE in determining whether a claimant can perform his past relevant work. *Lucas v. Sullivan*, 918 F.2d 1567, 1573, n.2 (11th Cir. 1990); *Schnorr v. Bowen*, 816 F.2d 578,

---

[2] The regulations merely require the ALJ to state the weight given to the opinion of a state agency medical or psychological consultant, not the reasons for that weight. See 20 C.F.R. §§404.1527(f)(2)(ii), 416.927(f) (2)(ii); Social Security Ruling (SSR) 96-2p, 1996 WL 374188 (S.S.A.).

582 (11th Cir. 1987).

The ALJ properly relied on the Dictionary of Occupational Titles (DOT) to find that Plaintiff could perform his past relevant work as generally performed in the national economy (Tr. 33). 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2); SSR 82-61, 1982 WL 31387 (S.S.A.). Plaintiff correctly points out that the job of cashier clerk, as described by the Dictionary of Occupational Titles, requires significant interaction with people. *U.S. Dep't of Labor, DOT* § 211.462-014, 1991 WL 671841. The job of building cleaner, however, rates working with people as "not significant." See DOT § 381.687-018, 1991 WL 673258. Talking and hearing are "not present" in the building cleaner job. See DOT § 381.687-018, 1991 WL 673258. The DOT description of Plaintiff's former work as an apartment building cleaner provided substantial evidence regarding the demands of his past relevant work and supported the ALJ's finding (Tr. 32). See 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2); SSR 82-61. Plaintiff's reliance on *Phillips v. Barnhart*, 357 F.3d 1232 (11th Cir. 2004) is misplaced, as that case addressed the ALJ's use of the Medical-Vocational grids versus a VE at step five of the sequential evaluation.

Once the ALJ has determined the claimant can no longer perform past relevant work and proceeds to step five of the sequential evaluation, the burden shifts to the Commissioner to identify other work that exists in significant numbers that the claimant can do. 20 C.F.R. §§ 404.1520(g), 416.920(g).

### C. SUBSTANTIAL EVIDENCE SUPPORTED THE ALJ'S DETERMINATION OF PLAINTIFF'S RESIDUAL FUNCTIONAL CAPACITY

Plaintiff argues that the ALJ failed to consider Dr. Burke's assessment of moderate limitations in concentration, persistence or pace and that he should have included such limitations in his determination of Plaintiff's RFC. (Pl.'s Br. at 17-18). Though Plaintiff correctly contends that even non-severe limitations must be addressed in the articulation of the RFC, citing SSR 96-8p, 1996 WL 374184 (S.S.A.), substantial evidence supports the ALJ's decision regarding Plaintiff's mild limitations in concentration, persistence or pace from the RFC determination.

Further, responsibility for the assessment of a claimant's RFC rests with the Commissioner. The RFC is reserved for the Commissioner because it is an administrative finding that is dispositive of a case; i.e., and directs the determination or decision of disability. 20 C.F.R. §§ 404.1527(e), 416.927(e); SSR 96-5p, 1996 WL 374183 (S.S.A.). Although an ALJ will consider opinions from acceptable medical sources on such issues as whether a claimant is disabled and a claimant's RFC, "the final responsibility for deciding these issues is reserved for the Commissioner." 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2); SSR 96-5p.

To the extent Plaintiff is arguing the ALJ's RFC assessment had to reflect the findings of a doctor, his argument is without merit. The responsibility for assessing a claimant's RFC rests with the ALJ. 20 C.F.R. §§ 404.1546 ( c), 416.946( c). Statements about what a claimant can still do despite his impairments are important evidence that must be considered in assessing a claimant's RFC, but such statements are not determinative. 20 C.F.R. §§ 404.1513(b), 404.1527, 404.1545, 416.913(b), 416.927, 416.945. Moreover, "[o]pinions on some issues," such as whether a claimant is disabled and the claimant's RFC, "are not medical opinions," . . .

"but are, instead, opinions on issues reserved for the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(e).

The ALJ found Plaintiff retained the RFC to perform medium work, except that he was limited to frequent but brief interpersonal contact with others (Tr. 21). Plaintiff argues that the ALJ improperly failed to include limitations reflecting Dr. Burke's assessment of moderate limitations maintaining concentration, persistence or pace. With regard to Plaintiff's mental limitations, the ALJ found at step two that Plaintiff had a severe impairment of anxiety disorder and depression (Tr. 18). In his PRTF findings, he determined that Plaintiff had mild restrictions in the activities of daily living, moderate difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace (Tr. 19-20). He found that Plaintiff had experienced no episodes of decompensation (Tr. 20).

In support of his finding that Plaintiff had mild limitations in concentration, persistence and pace, the ALJ cited Plaintiff's ability to spend a large part of his day reading the news, following sports teams, listening to games, and reading books at the library without any concentration difficulties (Tr. 20, 146, 150). He also cited Plaintiff's representation that he could follow instructions "ok," although he did have problems multi-tasking and stress from changes in routine (Tr. 20, 151).

The ALJ noted that Plaintiff's anti-anxiety medications allowed him to be stable and that his memory and concentration on several mental status exams were consistently within normal limits (Tr. 20). The medical records supported this finding, as even Dr. Weiss opined

that Plaintiff could sustain concentration and attention for extended periods when he did not feel pressure or expectations, and could remember instructions (Tr. 242). From August 2007 to July 2009, Plaintiff's attention and concentration were noted to be intact by Nurse Edwards (Tr. 300, 345, 348, 351, 354, 357, 359, 373, 382, 390, 394, 406). In December 2008, Dr. Majd Alsamman noted Plaintiff had grossly intact "memory/concentration/attention" upon admission to the crisis stabilization unit (Tr. 397).

The ALJ's decision was supported by substantial evidence in his determination that Plaintiff only had mild limitations in concentration, persistence, and pace, and that these limitations did not affect his ability to perform his past relevant work.

## IV. RECOMMENDATION

For the reasons stated above, it is respectfully recommended that the decision of the Commissioner be ***AFFIRMED***. Failure to file written objections to the proposed findings and recommendations in this report pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 6.02 within fourteen (14) days of the date of its filing shall bar an aggrieved party from a *de novo* determination by the district court of issues covered in the report, and shall bar an aggrieved party from attacking the factual findings on appeal.

**DONE** and **ORDERED** in Chambers, Fort Myers, Florida, this 25th day of January, 2012.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
of Court Mail or Deliver Copies of
this Order to All Parties and All Counsel of Record